Charles M. Stewart and Annie E. Stewart v. Commissioner.
Stewart v. Commissioner
Docket No. 17786.
United States Tax Court
1949 Tax Ct. Memo LEXIS 12; 8 T.C.M. (CCH) 1075; T.C.M. (RIA) 49294; December 19, 1949
B. A. Willcox, Esq., for the petitioners. Newman A. Townsend, Jr., Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion This proceeding involves determinations of deficiencies in petitioners' income tax for 1944, 1945, and 1946. Fraud penalties are in issue for each of these years. The deficiencies and fraud penalties are as follows: 50% Fraud
Year
Deficiency
Penalty
1944
$ 249.87
$ 124.94
1945
1,463.63
731.82
1946
7,059.91
3,529.96
Totals
$8,773.41
$4,386.72
Respondent determined the amounts of petitioners' income for the respective years by the means of computations based upon bank deposits, real estate transactions, and unsubstantiated deductions. The correctness of these determinations is at issue here, together with the question of the *13 correctness of the imposition of the fraud penalties. Findings of Fact Petitioners, Charles M. and Annie E. Stewart, reside at Bradenton, Florida. Their income tax returns for 1944, 1945, and 1946, the years in question, were filed with the collector of internal revenue for the district of Florida. The original returns for the taxable years were separate returns of Charles. Amended joint returns were later filed by Charles and Annie for the same years. Petitioners are husband and wife. By previous marriages, Charles had two children and Annie had six children. Throughout 1944, 1945, and 1946 these eight children lived with and were supported by petitioners. During 1944, 1945, and 1946 Charles served as constable in Manatee County, Florida. He was first appointed to this position and was later elected for another term. His compensation consisted of fees for making arrests and serving legal papers. He received no salary, but fees were paid to him for his services as constable. Charles did not complete the term as constable for which he had been elected. During 1947 he was removed from office by the Governor of Florida. Petitioners' income tax returns for 1944, 1945, and 1946 *14 were prepared by W. B. Shelby Critchlow, a lawyer with offices in Bradenton. They were based upon information furnished him by Charles. These returns disclosed all of the income which Charles revealed to Critchlow. Critchlow did not advise Charles that it was not necessary to report real estate transactions, other than those disclosed on the returns. The returns disclosed the following: 1944
Income from duties as Constable
$1,464.81
Less: Auto expenses
$804.65
Other deductions
174.00
978.65
Net Income
$ 486.00 *
Surtax exemptions claimed (9)
$4,500.00
Tax Liability
None
1945
Income from duties as Constable
$1,462.12
Gain on two real estate sales
625.00
Gross Income
$2,087.12
Less: Depreciation
$212.40
Auto expenses
348.00
Other deductions
408.60
969.00
Net Income
$1,118.12
Surtax exemptions claimed (10)
$5,000.00
Tax liability
$ 18.52
1946
Income from duties as Constable
$1,555.50
Loss from sale of auto
99.60
Gross
$1,455.90
Less: Depreciation on car
$220.05
Auto expenses
425.50
645.55
Adjusted Gross Income
$ 810.45
Number of exemptions listed (10)
Tax liability under "Supplement T" tax tables
None
*15 In May or June, 1947, an internal revenue agent learned of Charles' suspension as constable and instituted an investigation into his returns for 1944, 1945, and 1946. Charles first stated that his returns were correct as filed; he later had an accountant prepare amended joint returns for Charles and Annie disclosing twelve real estate transactions. The amended returns revealed net short term gains from real estate transactions of $614.85, $2,068.58, and $909.45 for 1944, 1945, and 1946, respectively. In computing their net gains, petitioners claimed deductions for improvements and selling expenses. Charles stated that these had not been reported on the original returns because he understood that Critchlow and the accountant had advised him that by reason of his large family such a disclosure wasnot necessary. The amended return for 1946 failed to report one transaction in that year. At times petitioner received some rent from the properties which was not reported on the original or amended returns. Petitioners did not keep any personal records or books of account. From public records of Manatee County and from information *16 set forth on their amended returns, petitioners had the following transactions in real estate: Date of
Total
Mortgage
Sale
Purchase or Sale
Property
Purchase Price
Given
Price
Sept. 28, 1944
Lot 27, Blk. B, Scrogins Subd.
$2,800
$2,300
Nov. 10, 1944
Lot 27, Blk. B., Scrogins Subd.
$4,200
Nov. 22, 1944
Lot 14, Betts & Clark
2,800
2,000
Dec. 18, 1944
Lots 8 & 9, High School
3,000
1,600
Jan. 5, 1945
Lots 8 & 9, High School
3,400
Feb. 19, 1945
Part NE 1/4 of SE 1/4, Sec. 25
3,400
2,200
Feb. 26, 1945
Part NE 1/4 of SE 1/4, Sec. 25
3,400
Mar. 5, 1945
House & No. 80 ft. Riverview - acq. by ex-
change for Lot 14, Betts & Clark Add.
consideration
500
Mar. 29, 1945
Lot 2, Block "F", Braeberg Plat
1,600
800
May 31, 1945
House & No. 80 ft. Riverview
5,200
July 16, 1945
Lots 1 & 2 - Investment Subd.
2,700
0
July 31, 1945
Lots 4 & 5 - Glazier
700
0
Feb. 2, 1946
Braden Castle
1,100
0
Feb. 6, 1946
NW Turner Lot [1]
3,400
0
Mar. 4, 1946
4th Ave. & Spring Lot
250
0
Mar. 4, 1946
NW Turner Lot
5,500
April 17, 1946
Braden Castle Lots
1,300
April 19, 1946
Paradise Farm Lot
250
0
April 23, 1946
4th Ave. & Spring Lot
300
June 11, 1946
High School Addn. Lots [2]
4,000
0
Aug. 1, 1946
High School Addn. Lots [2]
4,200
Aug. 1, 1946
Glazier Gallup Lots 1 & 2
4,000
0
Oct. 4, 1946
Paradise Farm
500
Oct. 4, 1946
Glazier Gallup Lots 1 & 2
5,000
*17 From these transactions, the revenue agent concluded that petitioners realized net short term capital gains of $1,400, $3,025, * and $3,800 for 1944, 1945, 1946, respectively. Cost and sales prices used by the revenue agent were obtained from petitioners' amended returns and the amounts indicated by the revenue stamps affixed to the deeds. No allowance was made by the revenue agent for cost of improvements or selling expenses because of his inability to ascertain evidence of such expenditurtures. During 1946, four mortgages given by petitioners in connection with certain of the above-described real estate transactions were satisfied, on the dates and in the amounts as follows: Date Paid
Property
Amount
3/30/46
Lot 27, Scrogins Sub
$2,300
5/22/46
Lots 8 and 9, High School Sub.
1,600
7/ 5/46
Lot 2, Block "F"
800
10/14/46
Section 25, Range 17
2,140
Total
$6,840
All of these properties had been disposed *18 of by petitioners in 1945. The purchasers had assumed the mortgages. During the investigation, the revenue agent asked Charles about his bank accounts. Charles produced a passbook on a savings account at the First National Bank of Bradenton in the name of "C. M. Stewart and Annie E. Stewart." This account was opened on January 14, 1947, with a deposit of $7,000, which Charles said had been given to him by an old uncle. At that time, Charles also said he had no other bank accounts. The revenue agent later discovered a checking account at the same bank in the name of "C. M. Stewart," which account had been opened October 7, 1945, closed March 31, 1947, and indicated a withdrawal of $7,000 on January 14, 1947. Upon further questioning, Charles denied that the $7,000 had come from an old uncle; he stated that it was comprised of $1,100 saved by Annie prior to their marriage, $1,400 which he had won at the dog races, and money which he had saved while working at the Tampa Shipbuilding Co. during the war. Petitioner had worked for the Tampa Shipbuilding Co. for some fourteen months prior to 1944. His income tax return for 1943 discloses total wages of $2,093.34 and exemption claimed *19 for the support of four minor children. During 1946 a total of $12,800 was deposited in the "C. M. Stewart" checking account at the First National Bank of Bradenton, including $3,750 in cash deposits. The revenue agent analyzed the deposits, some of which were identified with the above real estate transactions. He was not able to determine the origin of the following deposits of $3,810.72 for the period in question: 3-19-46 $300
4- 1-46
200 Currency
69.90
4- 4-46
122.49
4- 8-46
200 Currency
4-15-46
50 Currency
4-30-46
200 Currency
5- 8-46
50 Currency
5-10-46
35
62
5-14-46
100 Currency
5-23-46
700 Currency
5-29-46
400 Currency
70
9- 6-46
261.33
10- 5-46
140
11- 4-46
400 Currency
11-25-46
150 Currency
12-16-46
100 Currency
12-23-46
200
Total
$3,810.72
Respondent's notice of deficiency determined adjusted taxable net income for the years in question, as follows: 1944
Net income per original return
$ 486.00
Plus: (a) Unreported capital gains
$1,400.00
(b) Deductions disallowed
978.65
(c) Miscellaneous income (composed of cash from undisclosed source
invested in real estate during year)
2,700.00
5,078.65
Adjusted taxable net income
$ 5,564.65
1945
Net income per original return
$ 1,118.12
Plus: (a) Unreported capital gains
$2,400.00
(b) Deductions disallowed
968.60
(c) Miscellaneous income (composed of cash from undisclosed source
invested in real estate during year)
5,900.00
9,269.60
Adjusted taxable net income
$10,386.72
1946
Net income per original return
$ 810.35
Plus: (a) Unreported capital gains
$3,800.00
(b) Deductions disallowed
745.15 *
(c) Miscellaneous income (composed of cash from undisclosed source
invested in real estate during year)
9,300.00
(d) Miscellaneous income (bank deposits from undisclosed source)
3,810.72
(e) Miscellaneous income (mortgages paid off during year)
6,840.00
24,495.87
Adjusted taxable net income
$25,306.22
*20 Petitioners' adjusted taxable net income for the years in question, subject to exemptions, was as follows: 1944
$ 3,164.65
1945
4,386.72
1946
10,716.22
In the years in which it is concluded that there are deficiencies, no part of them was due to fraud with the intent to evade tax. Opinion KERN, Judge: Respondent, faced with the problem of ascertaining petitioners' correct income tax subject to tax for the years in question, and in the absence of cooperation from petitioners, resorted to the most acceptable means possible. See Halle v. Commissioner, (CA-2) 175 Fed. (2d) 500, affirming 7 T.C. 245. He used the amounts of petitioners' unexplained bank deposits, capital gains on the sale of property, the amount of money which appeared necessary to effectuate the various real estate transactions, and the sums used in the taxable years to discharge mortgages on properties which petitioners had owned. Their aggregate attributes sizable unreported incomes to petitioners, on which respondent is demanding fraud penalties. Petitioners assert that the increase *21 made by respondent in their capital gains reported in their amended returns is not correct by reason of his failure to adjust for costs of improvements and selling expenses. There is, however, no substantiating evidence in the record upon which we can find that funds were actually spent for such items or the amount thereof. The evidence shows, however, that in 1945 the amount of capital gain was $2,300 instead of $2,400. For the same reason we are not able to allow petitioner other miscellaneous deductions which he claims. Respondent also included as income sums of money invested in real estate which he regarded as cash acquired by petitioners from undisclosed sources. However, a careful analysis of respondent's recapitulation of the real estate transactions leads us to conclude that the chronology is such that petitioners in most instances used the proceeds of the sale of one property to acquire the next property. We have, accordingly, reduced these amounts to a considerable extent. The unidentified bank deposits with which respondent has petitioners charged equal $3,810.72 and all occur in the year 1946. They are deposits between March 19 and December 23, and are usually in *22 even hundreds or fifty dollars. Petitioners contend that some of these amounts represent collateral which Charles received in his official capacity, which was deposited in their bank account and accounted for on the disposition of the cases. His argument would be plausible if it were established by evidence such as the county record, which was admittedly available, or at least by a showing of offsetting withdrawals which could be identified with the deposits. On the state of the record, we must conclude that respondent did not err in including this amount in petitioners' income. Although the evidence leaves something to be desired, we believe that the record establishes and we have concluded that the income items attributed to petitioners, by reason of the discharge of mortgages on property which they had owned, were erroneous. The mortgages in question were satisfied by payment in 1946. All of the properties involved had been disposed of by petitioners in the previous year to purchasers who, we have concluded, assumed the mortgages. The final issue, that of the fraud penalties, must be concluded in petitioner's favor. Although the record suggests questionable practices on the *23 part of petitioners, we are not able to conclude that respondent has borne the burden of establishing fraud placed upon him by the statute. (I.R.C. section 1112) Many of the items going to make up the deficiencies stem from petitioner's failure to prove facts which might well have been shown. The limited experience, education, and ability of the parties are apparent throughout the case. Against such a background we are unable to conclude that respondent has presented clear and convincing proof which would lead us to the view that any part of the deficiencies was due to fraud with the intent to evade tax. (See: Frank A. Maddas, 40 B.T.A. 572, 578, aff'd. (CCA-3) 114 Fed. (2d) 548. Decision will be entered under Rule 50. Footnotes
*. There is a mathematical error of 16" on the return.↩
1. Respondent concedes credit of $1,200 withdrawal from checking account. ↩
2. Respondent concedes credit of $2,500 withdrawal from checking account.↩
*. This figure was later changed in the explanation attached to the notice of deficiency.↩
*. Including loss of $99.60 claimed on account of the sale of an automobile.↩